IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MIRANDA LEA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:20CV1141 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Miranda Lea ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on June 1, 2018, alleging a disability onset date of January 26, 2015. (Tr. at 20, 219-22.)[2] Her claim was denied initially (Tr. at 87-105, 137-47), and that determination was upheld on reconsideration (Tr. at 107-33, 148-55).

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #10].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 157-58.) Plaintiff, along with her attorney and an impartial vocational expert, attended a subsequent hearing on February 24, 2020. (Tr. at 20.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 41), and, on November 23, 2020, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since January 26, 2015, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease, right knee patella chondromalacia, right knee meniscus tear, obesity, bipolar disorder, depression, and anxiety[.]

(Tr. at 22.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 25-27.) Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform light work

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

except she requires the flexibility to alternate between sitting, standing, and walking within a 30-minute time frame without leaving work tasks. She can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl. She can work in a moderate noise level and can tolerate occasional exposure to vibration and hazards. [Plaintiff] is able to understand and follow short, simple instructions and can sustain concentration, persistence, and pace in two-hour increments. Lastly, changes in the work environment can be introduced occasionally.

(Tr. at 27.) At step four of the analysis, the ALJ determined that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 39.) Nevertheless, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 40.) Therefore, the ALJ concluded that Plaintiff was not disabled as defined by the Act. (Tr. at 41.)

Plaintiff now contends that the ALJ erred in two respects. First, Plaintiff argues that, in formulating her RFC, the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC assessment in accordance with <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015). Second, Plaintiff challenges the ALJ's step five determination, arguing that the ALJ failed to identify and provide a reasonable explanation for a conflict between the vocational expert's testimony and the <u>Dictionary of Occupational Titles</u> ("DOT"). After a thorough review of the record, the Court finds that Plaintiff's second contention requires remand

As set out above, in this case the ALJ found, in pertinent part, that Plaintiff was able to "understand and follow <u>short, simple instructions</u>." (Tr. at 27, 74.) The ALJ then asked the Vocational Expert ("VE") to identify jobs that could be performed by a hypothetical individual with these mental restrictions. The VE testified that such an individual could

6

perform light, unskilled jobs such as Office Helper, DOT 239.567-010, Router, DOT 222.587-038, and Photocopying Machine Operator, DOT 207.685-014. Ultimately, the ALJ relied on the VE's testimony at step five of the sequential analysis to find Plaintiff capable of performing the cited jobs. However, Plaintiff now contends that all of the occupations identified by the VE at step five require a Reasoning Level in the Dictionary of Occupational Titles that exceeds the mental limitations set out in the RFC.

The Fourth Circuit Court of Appeals has recognized that the ALJ has an affirmative duty to make an independent identification of apparent conflicts between VE testimony and the provisions of the Dictionary of Occupational Titles ("DOT"), regardless of whether a conflict is identified by the VE. Pearson v. Colvin, 810 F.3d 204, 208-09, 210 (4th Cir. 2015). In Pearson, because of an apparent conflict between the VE's testimony and the DOT, remand was required so that the ALJ could elicit a reasonable "explanation from the expert" before relying on the expert's testimony. Id. at 208-209, 211. As explained by the Fourth Circuit in Pearson with regard to the limitation on reaching at issue in that case:

> Deciding that the vocational expert's testimony apparently conflicts with the Dictionary here does not mean that an ALJ must find Pearson, or any other claimant with this limitation, unable to perform these jobs. Rather, it simply means that the ALJ and the expert should address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements. As the Seventh Circuit put it, "this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." Prochaska, 454 F.3d at 736 (remanding the case for the ALJ to determine whether the vocational expert's testimony conflicted with the Dictionary because "the ALJ asked the expert for work that could be done by someone who could only 'occasionally reach above shoulder level' while a cashier's requirements, under the [Dictionary], include 'reaching' frequently").
>
> Directly addressing this conflict is important because even if some motel cleaners, cashiers, and bench press operators need not frequently reach overhead with both arms, the number of positions in the national economy

7

without this requirement matters. An ALJ can only find a claimant not disabled at step five of the analysis if the Commissioner proves that the claimant can perform other work that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 404.1560(c). So it is not enough that some positions exist in which the worker need not frequently reach overhead with both arms. The vocational expert must testify to how many of these positions do not require frequent bilateral overhead reaching. Likely at least some have this requirement. If there are a sufficient number of these positions that do not require frequent bilateral overhead reaching, the ALJ can properly find Pearson not disabled. If too many do have this requirement, the ALJ will necessarily find that Pearson cannot do work that exists in significant numbers in the national economy.

Id.

In 2019, in Thomas v. Berryhill, the Fourth Circuit applied the principles articulated in Pearson as they related to the DOT's Reasoning Development scale. See Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019), as amended (Feb. 22, 2019). That scale has six levels—Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702.[5] The DOT assigns a Reasoning Development Level to each occupation identified therein. In Thomas, the vocational expert identified three jobs, all with

---

[5] Reasoning Levels 1 through 3 are defined as follows:

> LEVEL 3
> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.
>
> LEVEL 2
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 1
> Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

U.S. Dept. of Labor, DOT, App. C, available at 1991 WL 688702.

8

Case 1:20-cv-01141-CCE-JEP   Document 20   Filed 01/26/22   Page 8 of 14

a Reasoning Level of 2, "requir[ing] employees to 'carry out detailed but uninvolved written or oral instructions.' By comparison, Thomas's RFC limit[ed] her to jobs that involve only 'short, simple instructions.' " Thomas, 916 F.3d at 314 (internal citations omitted). The Fourth Circuit explained:

> An ALJ cannot rely unquestioningly on a VE's testimony. Rather, an ALJ must ensure that any "apparent" conflicts between the Dictionary and the VE's testimony are reasonably resolved. SSR 00-4P, 2000 WL 1898704 at *2. To that end, the ALJ must ask the VE whether his or her testimony conflicts with the DOT. If the answer is "yes," the ALJ "must elicit a reasonable explanation for the conflict before relying on" the testimony. Id. But even if the VE answers "no," the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015). This means that the ALJ must recognize and resolve ways in which a VE's testimony "seems to, but does not necessarily," conflict with the "express language" of the DOT—even if the conflict is not "obvious." Id. at 209.
>
> . . . .
>
> The VE's testimony in this case contains a comparable conflict with the DOT. After being informed of Thomas's RFC, the VE testified that Thomas was capable of holding three jobs: marker, final inspector, and order caller. [T]he DOT states that all three of the jobs identified by the VE require employees to "carry out detailed but uninvolved written or oral instructions . . . ." DOT 209.587-034, 1991 WL 671802; DOT 727.687-054, 1991 WL 679672; DOT 209.667-014, 1991 WL 671807. By comparison, Thomas's RFC limits her to jobs that involve only "short, simple instructions."
>
> We believe that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions. This is not a categorical rule—some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved. Even so, the conflict between Thomas's limitation to short, simple instructions and the VE's testimony that Thomas could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in Pearson. Since we held that an apparent conflict existed in Pearson, we are satisfied that one exists in this case, too. We remand so that the ALJ can resolve the conflict in accordance with the Administration's regulations.

Id. at 313-314.

Consequently, in <u>Thomas</u>, the Fourth Circuit held that there was an apparent conflict between jobs requiring Level 2 reasoning and a limitation to "short, simple instructions." <u>Id.</u>; <u>see also</u> <u>Lawrence v. Saul</u>, 941 F.3d 140, 143 (4th Cir. 2019) ("In <u>Thomas v. Berryhill</u>, this court found an apparent conflict between the claimant's residual functional capacity, which limited her to jobs involving 'short, simple instructions,' and Level 2's concept of 'detailed but uninvolved instructions.'"). Since reasoning levels ascend in levels of complexity, <u>Thomas</u> therefore stands for the proposition that there is an apparent conflict between jobs requiring Level 2 reasoning or higher and a limitation to "short, simple instructions."

In the present case, as in <u>Thomas</u>, both the ALJ's RFC determination and the hypothetical to the VE limited the claimant to "understand[ing] and follow[ing] short, simple instructions." (Tr. at 27, 74.) Yet, as in <u>Thomas</u>, all of the jobs identified by the VE and cited by the ALJ at step five of the sequential analysis require Level 2 reasoning or higher and, therefore, involve carrying out at least "detailed but uninvolved written or oral instructions." (Tr. at 40, 74 (<u>referencing</u> Office Helper, DOT 239.567-010, 1991 WL 672232 ("Reasoning: Level 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."); Router, DOT 222.587-038, 1991 WL 672123 (same)); Photocopying Machine Operator, DOT 207.685.014, 1991 WL 671745) (same)).) Accordingly, as in <u>Thomas</u>, the ALJ in this case was faced with an apparent conflict between the testimony of the VE and the DOT and, as a result, had an independent and affirmative duty to resolve this apparent conflict.

Notably, in the present case, immediately after the VE identified the three jobs cited in the ALJ's decision, the following, brief exchange took place:

[ALJ:] Consistent with the DOT?

[VE:] Short, simple instructions, concentration, attention, pace two-hour intervals, occasionally changes. As experienced education and training.

(Tr. at 74.) The ALJ thereafter translated the VE's response as follows:

> <u>The DOT does not address the performance of simple instructions</u>; sustaining concentration, persistence, or pace; changes in the work environment; or adjusting positions. However, Ms. Brinson stated that her testimony in those regards is based on her experience, education, and training in the field of vocational analysis. While the vocational expert's testimony is not fully consistent with the information contained in the DOT, there is a reasonable explanation for the discrepancy and, therefore, her testimony is accepted in accordance with Social Security Ruling 00-4p.

(Tr. at 40 (emphasis added).) Relying on the ALJ's assertion that the DOT does not address the performance of simple instructions, Defendant in the briefing argues that there is "no apparent, unresolved conflict with respect to the office helper, router, and photocopy machine operator positions identified by the VE" because "[t]he DOT does not address the performance of simple instructions." (Def.'s Br. [Doc. #17] at 12.) Defendant appears to argue that there is no conflict with the DOT, or alternatively, to the extent that a discrepancy exists, the ALJ provided a reasonable explanation for accepting the VE's testimony anyway.

However, as set out above, the DOT expressly includes reasoning level requirements for every job it lists, defined in terms of the complexity and nature of the required instructions. These requirements clearly belie Defendant's contention that the DOT does not address the ability to follow short, simple instructions. Indeed, as set out above, the Fourth Circuit has specifically held that the DOT does address the ability to carry out instructions, as set out in

11

the Reasoning Levels, and the Fourth Circuit has further held that DOT Reasoning Level 2 is in apparent conflict with a limitation to short, simple instructions. See Thomas, 916 F.3d at 313-14. The Fourth Circuit in Lawrence v. Saul further clarified that a DOT Reasoning Level 2 is not in apparent conflict with a limitation to simple instructions, but it is still in conflict with a limitation to short instructions. Lawrence, 941 F.3d at 143 ("Even assuming that 'tasks' and 'instructions' are synonymous, the key difference is that Thomas was limited to 'short' instructions. 'Short' is inconsistent with 'detailed' because detail and length are highly correlated.") The ALJ in the present case stated that the DOT did not address the performance of simple instructions (Tr. at 40), but the ALJ did not reference or address at all the apparent conflict with the RFC limitation to short instructions. Thus, the ALJ's assessment was incomplete at best. Further, the fact that the ALJ asked the VE whether her findings were consistent with the DOT, received an answer with partially erroneous information, and then included an incomplete repetition of that erroneous information in her decision does not fulfill the ALJ's duty under Pearson and its progeny to identify and provide a reasonable explanation for conflicts. From the record and the decision of the ALJ, it is unclear whether the ALJ incorrectly believed that a Reasoning Level 2 was completely consistent with the RFC restriction to short, simple instructions, or instead understood that there was at least some apparent inconsistency between the two. Further, even if the ALJ did understand that there was some apparent inconsistency, it is not clear if the VE understood the inconsistency, or how that inconsistency was resolved. The ALJ noted that the VE testified based on her experience, education, and training in the field of vocational analysis, but it is not clear from the testimony or the ALJ's decision whether the VE believed that all

the identified positions involved only short, simple instructions notwithstanding the DOT Reasoning Levels, either reflecting an outright disagreement with the DOT's assignment of Reasoning Levels or a determination that the identified positions involved simultaneously short, simple, detailed and uninvolved instructions, or whether there was some smaller, unidentified number of positions that involved only short, simple instructions, or whether in her training and experience the inconsistency could be resolved in some other way. This lack of clarity and explanation leaves the Court unable to determine whether or how the apparent conflict was resolved. As explained in Pearson, an ALJ "has not fully developed the record if it contains an unresolved conflict between the [VE's] testimony and the Dictionary [of Occupational Titles]." Pearson, 810 F.3d at 210.

Notably, Defendant's brief completely omits any reference to Reasoning Levels or to the direct applicability of the Fourth Circuit's holding in Thomas, and the Court is therefore left without any analysis or authority from Defendant addressing this issue within the Fourth Circuit's framework. Based on the information presently before the Court, the Court finds that the ALJ in this case did not sufficiently address the apparent conflict between Plaintiff's limitation to "short, simple instructions" and the Reasoning Level of the jobs identified at step five. (Tr. at 40, 74.) Because the ALJ in this case did not address this apparent conflict between the VE's testimony and the DOT, it remains unresolved and—consistent with the outcome in Thomas—remand is necessary.

None of this necessarily means that Plaintiff is disabled under the Act and the Court expresses no opinion on that matter. Nevertheless, the Court concludes that the proper course here is to remand this matter for further administrative proceedings. At this time, the Court

13

need not consider the additional issue raised by Plaintiff, as the ALJ on remand will have the opportunity to consider all of the evidence and Plaintiff's contentions in making a determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). Defendant's Motion for Judgment on the Pleadings [Doc. #16] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] should be GRANTED to the extent set out herein.

This, the 26th day of January, 2022.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge